You may begin. All right. Thank you, Your Honors. May it please the court. I am Chad Hatfield on behalf of Ms. Stipek. I do wish to reserve two minutes for rebuttal. Okay, please watch the clock. Okay, thank you. In this case comes down to one significant error made by an administrative law judge, and that is that she did not herself independently evaluate or making a reasoning regarding the actual pulmonary function testing values. We see her statement in the record is that the evidence fails to establish the claimant has demonstrated the records of FEV1 or FEVFDC values necessary to meet the listing. And then she noted that the attorney had conceded that the values were not needed on its own terms, and then asked for equivalence. As we reviewed the record, we see that 3.02A, the FEV1 value was clearly met. And that was the status at the hearing, 1.25 or less to meet the listing. It was at 1.02 after Bronco Data. So clearly met the listing on its own. That is an alternative 3.02B FDC value was one one hundredth of a point shy of meeting and serving as another independent basis for meeting of a listing. Now, as the ALJ did not review those and made that error, it threw off her thinking. And it's very important because she was no longer looking at a set table, which has values that meet the listings. She was looking at equivalence. And therefore, she had to look outside the tables and find other clinical documentation or support that would rise up to have an equivalent finding of meeting those actual terms or values on their own, to which the judge cited one chart note in December 2018. And to her credit, it was noted the mistypic had moved and it did not follow up with a pulmonary specialist because of that move. So this was that brain MRI. The findings did not show significant breathing problems on that examination. So the government argues that you needed to show or there needed to be evidence that she was medically stable at the time of test. And the record doesn't show she was medically stable. And in fact, there is the medical evidence raises the inference that she was not. Could you address that? Yes, I think that's what I was getting to, Your Honor. So medical stability is needed at the time of the test. And what we see is that mistypic has longstanding issues of asthma and chronic respiratory distress. She did not report for a pulmonary function testing due to an emergency room visit or an urgent care visit. But this pulmonary function test was requested by her primary care provider, Dr. Carlson, almost approximately a month before the testing was done. When it has the examples in the listing of what would be an example of not being medically stable, it talks about a change in prescription within two weeks of the testing or getting treatment for a lower respiratory tract infection, which was not the case here or experiencing currently experiencing or within 30 days of completion of treatment for an acute exacerbation. In this case, there was no treatment for an acute exacerbation. Nothing was done, but a referral is made from a care provider to have a testing done. That's really important in this test because if there had been some kind of new specialized treatment done, then we'd see there was some kind of change noted by the doctor, which needed to be treated first before the testing. That was not done. Instead, they had decided to find out, okay, what is her breathing level like? She had already noted that she didn't really understand how bad her breathing problems were because she was a victim of domestic violence, suffering PTSD with frequent panic attacks and did not know how much of her shortness of breath was due to her mental health impairments due to her breathing. So as she went to get the test, it is specifically noted on the pulmonary function test that there was no dyspnea on exertion or at rest. She was not coughing and that she had already quit smoking. So there was a finding of medical stability. Also importantly, they did a bronchodilator that did not show significant response to the bronchodilator, therefore showing that it wasn't just some acute asthma she was having at the time that would respond to her bronchodilator. So there was no evidence of any kind of medical instability, yet a routine call for a pulmonary function testing to see what levels hers were at. The listing does not say that there could be no symptoms within 30 days of the test, because that would not make sense. It was only because of having symptoms and having complaints that any pulmonary function testing would be ordered. What about the fact that three months later in December of 2018, a note shows she has normal breathing and no problem. Does that offset the September reading that you say failed to meet the listing of 3.02? It did meet the listing of 3.02. I'm saying, but what about the fact that three months later she has normal breathing? Don't you have to have disability for 12 months? You can't just have it on one specific date to qualify. As we see the specific listing, they have a table of values. The value is set so low that if someone has that value on a breathing test during medical stability, they're going to have enough complications arising from here and there in small circumstances, dust, blow, fumes, whatever else, that we're going to find them disabled. Certain listings do require things such as a repeat test, you know, over 60 days apart, less than six months, other requirements. This listing does not. This listing has a one-time test. It does meet the listing because there's going to necessarily be complications from that. It's not going to be every day, and she's never alleged that she has breathing problems every day, nor does that really make sense to have that kind of breathing problems every day, similar as when you'd have like the seizure listings where they require a certain frequency or something else. It's not ongoing, you know, asthma attacks on a daily or, you know, even there's no specificity in the listing for how frequent it has to happen because she is at that value. Well, the government argues, excuse me, the government argues, and that's my understanding as well, that the listings inherently include a 12-month durational requirement unless they specify something else, and the government argues that we should infer that the 12-month durational requirement was not met due to the showing of normal breathing in December, three months later. Are you saying there is no durational requirement for meeting the listing? Well, your honor, I would say that in this specific thing, it is noted that there is a one-time evaluation that's needed to meet the listing, so that would take it outside of the normal 12-month requirement or other requirement it states, but also the ALJ never raised the durational element. She found asthma and chronic lung disease and severe impairment in the last 12 months. We have notations in the records to shortness of breath, other fatigue, wheezing. She noted in record page 815, June 2017, shortness of breath is her baseline, so the fact that she has one appointment three months later, that she's not having notable symptoms or she's getting her right to report those, no, I don't think that that would in any way discount a very objective test that we have for social security to set for this very purpose. Did you want to save the rest of your time? Yes, thank you. Okay, we'll hear from the government. Good morning, your honors. May it please the court, Catherine Watson for the commissioner. As has been pointed out, the main issue in this case is whether the mild asthma that the doctors have diagnosed in this case would meet or equal a listing. And I'd like to note, as Judge Ikuda pointed out, that the standard here is that the plaintiff has the burden of showing that she meets all the elements of the listing. So if there is not a plausible theory that she meets any of those elements, then the plaintiff has not provided a valid basis for reversal. Here, plaintiff is correct that, excuse me, Stiepeck is correct, that her spirometry test did show FEV levels that were listing levels on that one testing occasion. However, the listings also require that she be medically stable at the time of the test. And I'd like to point out that the definition, one of the definitions, is acute exacerbation. And it does not require that she be within 30 days of completion of treatment for an acute exacerbation. I'll just read it. It says experiencing or within 30 days of completion of treatment for an acute exacerbation or temporary worsening of a chronic respiratory disorder. Here, the evidence indicates that she was experiencing an acute exacerbation of her chronic respiratory disorder. There's a number of reasons for that. First, as has been noted by the LJ and also the judges here, a mere three months after the test, she displayed entirely normal findings on a respiratory examination. We don't have respiratory examinations just around the test. The most recent was actually over a year prior to the test in June 2017. That test, along with prior respiratory examinations, also displayed generally normal findings. The ALJ didn't rely on any of that, did she? The ALJ did not rely on the prior test. The ALJ simply noted that the pulmonary function test did not provide background information as to whether she was experiencing such an exacerbation. And then he then noted the test three months later. But even if the ALJ's reasoning was less than clear, reversal still cannot be had if there is not a plausible theory that she met all the requirements, including the medical stability requirement at the time of testing. And it's our position that she cannot show medical stability here. And in fact, according to CPEC's own testimony, which is on card 61 of the card, she testified to noticing difficulties with breathing just prior to the test. She said she was having a lot of difficulties with breathing, and this is what led to her, according to her testimony, taking this test. So her own testimony indicates that at the time that she went back to school, she was in fact experiencing an acute exacerbation. And I also note that earlier in June 2017, when she was applying for jobs, ultimately obtained a job, I believe at this point it was with the goodwill, she had checked off boxes indicating what impairments affect her ability to work. She did not indicate that respiratory difficulties in any way impacted her ability to work. And when she listed her impairments, she did not note asthma as an impairment that in any way affected her ability to work. So based on this evidence, it's our position that CPEC cannot present any plausible theory that she was experiencing, that she was not experiencing, or that an acute exacerbation was in fact medically stable. And the evidence here points to the opposite. But why, I mean, as your friend on the other side points out, I mean, nobody takes these tests for fun, right? The reason that you take the test is because you're experiencing some problems. So it seems sort of a leap from the fact that she took the test because she was having some difficulty to conclude that that was a period of acute exacerbation, so as to defeat medical stability under the regulation. So how do we make that inference? Well, I would say two reasons. First, her own testimony essentially seems to indicate as much. Her own testimony says that when she went back to school, she was experiencing very acute difficulties breathing. This was not what she was indicating when she was applying for jobs. She in no way indicated when she was, she didn't indicate when she was applying for jobs that she was experiencing any difficulties breathing. And in fact, during many of these respiratory examinations, she denied respiratory symptoms at all. So there was no difficulties. This is not to say she didn't experience some shortness of breath at times. There is indication in the record that at times she experienced a shortness of breath. She characterized her asthma as mild. But in no way did she indicate that she was experiencing such difficulty breathing, she could not work. And in fact, the evidence shows the opposite. She was working and she was able to work and she did not indicate that asthma in any way impacted that ability to work. However, when she went back to school, she did notice these difficulties breathing. And she said herself, she was having extreme difficulties or very acute difficulties breathing. And that that was what led her to take this test. And then we have three months later, when she's again, the examination shows normal findings. So I'd say based on this evidence, I think the evidence does in fact, clearly indicate that there is an acute exacerbation here. And that there's, and regardless, there's no way for CPEC to show her burden of showing medical stability. Tell me this, do you have any case that's comparable to this that supports the government's position that once you do meet a listing on a specific occasion, that it can be offset by other proof of what happened before or after? Yeah, I pointed to cases which really go to the standard of proof. I don't have a specific case on the listing. However, the case law is clear. I point to Lewis v. Epfel, which says, if the claimant does not present a plausible theory that they meet each criteria of the listing, then there cannot be a basis reversal. In my brief, I noted Sullivan v. Zebley, which talks about the standard for the listing. It talks about how the listing standard is so high. It's not simply that the claimant cannot perform substantial gainful work. It's that she cannot perform any gainful employment at all. Here, of course, we do know she was, throughout much of the relevant period, performing gainful employment. That case talks about how, and I'll just quote it, an impairment that manifests only some listing criteria does not qualify. Here, we do have her, and then we have the regulations, which clearly state what the criteria is. We do have one criteria that is met, but we don't have other criteria, namely the employment. In other words, these seem to be overlapping concepts in the sense that the reason why she must be medically stable is it cannot be just at one point at time or one day if her symptoms were so severe that she cannot work. Medically, stability indicates there needs to be some longitudinal basis here, and then we have regulations also indicating that 12 months requirements. Turning to, does anybody, I could speak to her subjective complaints, but if the interest is really on the listings, I'd be happy to focus there for the remaining few minutes. I think the main focus is on that listing because that's the government's weakest point. Okay. Does anybody have any questions, further questions? Well, I mean, I guess maybe you've already addressed this, but the difficulty I'm having is that none of this, or very little of this, is actually in the ALJ's opinion, and these are all reasonable inferences that one might draw from the record, but they're not the inferences that so what can you point to, to allow us to say, I mean, this is necessarily what the ALJ would have to find on remand? Yeah, so two points to that. The first is what I said, either, which is that even if this court concluded that the ALJ's reasoning was deficient, if the claimant, and this is from Louis Villapelle, if the claimant does not present a plausible theory that she meets the specific criteria of requirements, the court cannot reverse. So that is in binding case law. But the second point is that I think a court could reasonably infer, though the ALJ's reasoning was certainly less than clear, but a court could reasonably infer from certain findings, so even if there's errors in other aspects of the ALJ's findings, we do have from the ALJ on CAR-19, the ALJ specifically stated the pulmonary function study did not provide any background information as to whether Stiefik was experiencing exacerbation. Exacerbation or an acute exacerbation does specifically relate in our listings to medical stability. It's one of the definitions of medical stability. If she's experiencing acute exacerbation, in other words, she's not medically stable. And then the ALJ specifically then says that the evidence shows normal respiratory findings three months after the test. So we also have case law that even if the ALJ's reasoning is less than clear, so long as the court can reasonably infer the ALJ's reasoning, that's sufficient. That would be Molina and other cases. So there'd be two bases for affirmance. One is that the ALJ's reasoning can be reasonably inferred, that the ALJ reasonably indicated that there did not seem to be evidence of medical stability, which is required. And the other is that even if the ALJ's reasoning was deficient, it's still the claimant's burden to medical stability, and she cannot present a plausible theory that she did so here. And I see I'm out of time, so if there's no more questions, I'd like to ask this court to affirm. I think you have a few minutes left for rebuttal. Oh, you're muted. Thank you. I'd like to direct your attention to the specific language of the listing 3.00E2 regarding medical stability. You must be medically stable at the time of the test. And we say there's no plausible theory of medical stability. At the actual test, it was known there was no dyspnea at rest or on exertion and no coughing. There was no response to the bronchodilator, showing it wasn't just like an asthma in response to the albuterol that was given to her on the testing. That is evidence of medical stability at the time of the test. Now, three months later, there's also been a dyspnea on exertion. Are we to say then that she had no symptoms at all, not even during the time of the test? That can't be so because there was an objective measure that's used by Social Security. They depend and rely upon this with such certainty that they put it into the listing that that's what is required for the one-time test is these values. It was shown that the DLCL score was a grade A, she had good volume, she had good effort, and there was nothing to indicate medical instability during the time of that test. Now, it was noted in the commissioner's brief that in December 2018, it was noted that she still had mild persistent asthma, but that's not really the way to look at that. That was listed under her history of problems. There was no indication that when they had their brain MRI, there was no that she had that they had the pulmonary function testing, which clearly would show that it's much worse than she believed. She didn't do well at her jobs. And there is no requirement that a listing show that could be absolutely no gainful activity done. Just as an example, I gave with seizures, people having those, she was noted to have problems with stamina and breathing. She went through three different positions at Safeway, her hours were cut, her job, her employer told her she wasn't doing that well, even though she said she was doing well, she was not doing well. For these reasons, I would say that Ms. Stipek did show that there was medical stability, there was definitely a plausible theory, and the objective test for the measurement of meeting the listing was met. Thank you. We thank both sides for their argument, and the case of Stipek versus Kiyokaze is submitted.
judges: Gilman, IKUTA, MILLER